IN RE: SUSPENSION OF THE LICENSE TO OPERATE A MOTOR VEHICLE OF RHONDA RICKER ROGERS, NCDL #: 7677137

No. 885SC1416

(Filed 5 July 1989)

**Automobiles and Other Vehicles § 2.4— refusal to take breathalyzer test—revocation of license—validity of testing procedures irrelevant**

The validity of testing procedures is not relevant in a review of a license revocation for willful refusal to submit to a breathalyzer test, since review is limited to the issues set out in N.C.G.S. § 20-16.2(d), and compliance with testing procedures is not included therein. Therefore, the superior court erred in ruling that a breathalyzer operator's failure to perform a simulator test as well as the actual test in the presence of petitioner's witness precluded the revocation of petitioner's license for refusal to take the test.

APPEAL by respondent from Llewellyn (James D.), Judge. Order entered 12 September 1988 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 17 May 1989.

IN RE SUSPENSION OF LICENSE OF ROGERS

[94 N.C. App. 505 (1989)]

*Hewlett, Collins & Mahn, by John C. Collins, for petitioner-appellee.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General William B. Ray, for respondent-appellant.*

PARKER, Judge.

Following her arrest for driving while impaired, petitioner was notified by the Division of Motor Vehicles that her license to drive was revoked for twelve months pursuant to G.S. 20-16.2 for her refusal to take a breathalyzer test. Petitioner obtained a hearing before the Division under G.S. 20-16.2(d) and the Division sustained the revocation. Petitioner then appealed to the Superior Court pursuant to G.S. 20-16.2(e) and G.S. 20-25. The Superior Court found that the test which petitioner allegedly refused to take was not administered in compliance with G.S. 20-16.2(a) and regulations promulgated by the Department of Human Resources. The trial court's order enjoined respondent Commissioner of Motor Vehicles from revoking petitioner's license.

Respondent contends that the trial court erred in enjoining him from revoking petitioner's license on the grounds that proper procedures were not followed in administering the breathalyzer test. We agree and reverse the trial court's order in this case.

By statute, a hearing before the Division of Motor Vehicles to determine whether a revocation for failure to submit to chemical analysis will be sustained must be limited to consideration of whether:

(1) The person was charged with an implied-consent offense;

(2) The charging officer had reasonable grounds to believe that the person had committed an implied-consent offense;

(3) The implied-consent offense charged involved death or critical injury to another person, if this allegation is in the affidavit;

(4) The person was notified of his rights as required by subsection (a); and

(5) The person willfully refused to submit to a chemical analysis upon the request of the charging officer.

G.S. 20-16.2(d). Although the Division's determination is subject to *de novo* review by the Superior Court, the hearing in Superior Court is limited to the same five issues. G.S. 20-16.2(e). If all

five conditions are met, the revocation must be sustained. G.S. 20-16.2(d).

In the present case, petitioner has stipulated to conditions (1) and (2). She has also stipulated that the charging officer requested her to take a breathalyzer test and that there was present at that time a qualified breathalyzer operator who held a valid permit as required by G.S. 20-139.1. Condition (3) is not relevant in this case. Therefore, the only issues to be determined by the trial court related to conditions (4) and (5). The issues were (i) whether petitioner was notified of her rights as required by G.S. 20-16.2(a) and (ii) whether petitioner willfully refused to take the test.

General Statute 20-16.2(a) provides that a person charged with an implied-consent offense must be given oral and written notification of his rights with regard to chemical analysis and the consequences of taking or refusing to take a test. The evidence in this case tends to show that petitioner received notification of her rights at 11:10 P.M. Under G.S. 20-16.2(a)(6), petitioner had the right to select a witness to view the testing procedures so long as the test would not be delayed for more than thirty minutes from the time she was notified of her rights. Petitioner exercised this right and her witness arrived at 11:30 P.M. Following the witness's arrival, the breathalyzer operator attempted to conduct the test.

Although the actual testing of petitioner occurred in the presence of the witness, it is undisputed that the breathalyzer operator performed a "simulator test" for the purpose of calibrating the apparatus prior to the witness's arrival. The simulator test is part of the Department of Human Resource's required procedure to be followed when testing with the apparatus used in this case. 10 N.C. Admin. Code 7B.0336. Compliance with the Department's procedures is required by statute. G.S. 20-139.1. Under G.S. 20-16.2(a)(6), a person has the right to select a witness to view the "testing procedures." In this case, the trial court found that this statutory provision required the breathalyzer operator to perform the simulator test in the witness's presence and the failure to do so precluded respondent from revoking petitioner's license for her refusal to take the test.

Under the facts of this case, we find it unnecessary, however, to decide whether the trial court correctly ruled that petitioner had the right to have her witness view the simulator test as well as the actual test. Petitioner's license was revoked based upon her

willful refusal to take the test. In reviewing this revocation, the trial court could properly consider only those issues specified in G.S. 20-16.2(d) and, in this case, the only unresolved issues are whether petitioner was properly notified of her rights and whether she willfully refused to take the test. The evidence clearly establishes that petitioner received proper notification of her rights and the trial court made a finding of fact to that effect. Therefore, petitioner's license is subject to revocation unless she did not willfully refuse to take the test.

The trial court's order contains no findings or conclusions regarding the willful refusal issue. The evidence tends to show that the operator could not perform the test because, despite the operator's repeated requests, petitioner refused to expel sufficient air into the apparatus to provide an adequate breath sample. This evidence could support a finding that petitioner willfully refused to take the test. *See Bell v. Powell, Comr. of Motor Vehicles,* 41 N.C. App. 131, 254 S.E. 2d 191 (1979). The trial court did not reach this question, however, because it ruled that the failure to perform the simulator test in the witness's presence precluded revocation.

Although the trial court did not phrase its order in terms of willful refusal, the clear meaning of the order is that no willful refusal could occur because the operator did not perform the test in compliance with the requirements of G.S. 20-16.2(a). General Statute 20.16.2(d) requires only notification of the rights specified in subsection (a); a violation of those rights is not listed as a reviewable issue in a hearing to determine the validity of a revocation for willful refusal to submit to chemical analysis. Accordingly, we find that the trial court erred in enjoining the revocation of petitioner's license on that basis.

Obviously, notification of a right is of little value if there is no remedy for the denial of the right. In the present case, however, any violation of petitioner's rights was unrelated to her alleged decision to refuse the test. Under G.S. 20-16.2, a willful refusal occurs where a motorist:

(1) is aware that he has a choice to take or to refuse to take the test; (2) is aware of the time limit within which he must take the test; (3) voluntarily elects not to take the test; and (4) knowingly permits the prescribed thirty-minute time limit to expire before he elects to take the test.

*Etheridge v. Peters, Comr. of Motor Vehicles,* 301 N.C. 76, 81, 269 S.E. 2d 133, 136 (1980). The purpose of the statute is fulfilled when the motorist is given the option to take or refuse to take the test after being informed of his statutory rights. *Rice v. Peters, Comr. of Motor Vehicles,* 48 N.C. App. 697, 700-01, 269 S.E. 2d 740, 742 (1980).

Petitioner in this case was informed of and exercised her right to have a witness view the test. The evidence tends to show that she did not object to the test on any grounds but feigned compliance by placing her mouth on the apparatus. The operator's determination that she willfully refused to take the test was based upon her failure to blow into the apparatus. There is no evidence that her failure to do so was in any way related to the prior simulator test. The operator testified that the simulator test took no longer than three-and-a-half minutes to complete. Thus, the operator could have repeated the simulator test in the presence of the witness if petitioner had requested him to do so.

The purpose of statutory provisions and regulations governing chemical tests for impaired driving charges is to ensure the fairness and accuracy of such tests. This purpose is served by allowing a motorist to have a witness view the test. Considerations of fairness and accuracy are not present, however, when a motorist refuses to take a test for wholly unrelated reasons. Under G.S. 20-16.2(a), a motorist impliedly consents to chemical analysis if he is charged with impaired driving. Revocation under the statute is a penalty for failing to comply with a condition for the privilege of possessing a license; it is not punishment for the crime for which the motorist was arrested. *Joyner v. Garrett, Comr. of Motor Vehicles,* 279 N.C. 226, 234-35, 182 S.E. 2d 553, 559 (1971).

Among other jurisdictions considering the issue there is a split of authority. Several have held that defects in testing procedures are irrelevant in determining whether to suspend or revoke a motorist's license for his refusal to submit to a test. *Halloway v. Martin,* 143 Ariz. 311, 693 P. 2d 966 (Ct. App. 1984); *Moran v. Commonwealth,* 44 Pa. Commw. 105, 403 A. 2d 637 (1979); *Bell v. Department of Motor Vehicles,* 6 Wash. App. 736, 496 P. 2d 545 (1972). *But see Mullens v. Department of Pub. Safety, Drivers License Div.,* 327 So. 2d 492 (La. Ct. App.), *cert. denied,* 331 So. 2d 851 (La. 1976) and *Gibb v. Dorius,* 533 P. 2d 299 (Utah 1975) (holding that revocation cannot be based upon a refusal to submit

IN RE SUSPENSION OF LICENSE OF ROGERS

[94 N.C. App. 505 (1989)]

to an invalid test). Our legislature has expressly limited review of revocations for refusal to submit to chemical analysis to the issues set out in G.S. 20-16.2(d), and compliance with testing procedures is not included therein. Accordingly, we join those jurisdictions which have held that the validity of testing procedures is not relevant where a motorist has refused to take the test.

We emphasize that our decision in this case does not relieve law-enforcement personnel of their duty to comply with all statutes and regulations governing chemical tests. A motorist under arrest for impaired driving has the right to insist on such compliance and there may be cases where defects in testing procedures will entitle a motorist to refuse to submit. In this case, however, there is no evidence of any causal relationship between the defect, if any, and petitioner's alleged refusal. Petitioner received notice of the consequences of a refusal. She cannot now avoid those consequences by attacking the validity of the test if she made an informed choice not to take it. We express no opinion as to whether the test results would have been admissible evidence if the test had been completed.

Accordingly, we reverse the trial court's order enjoining respondent from revoking petitioner's license. Because the trial court made no findings of fact or conclusions of law as to whether petitioner's conduct amounted to a willful refusal to take the breathalyzer test, the case is remanded for a determination on that issue.

Reversed and remanded.

Judges EAGLES and ORR concur.